IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ANGELIA LEE WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-024 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Angelia Lee Wright appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.  **BACKGROUND**

Plaintiff is a fifty year old female born on February 4, 1966. Tr. ("R."), p. 67. She completed high school while enrolled in regular classes and is a certified nursing assistant, R. 38, however Plaintiff has no past work experience in that capacity, but does have work experience as a housekeeper and janitor. R. 22, 226. She protectively applied for Supplemental Security Income ("SSI") on March 28, 2012, alleging disability onset on January 13, 2012. R. 130-136.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 99-102, 105-108. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), who held a hearing on August 27, 2013. R. 30-64. The ALJ heard testimony from Plaintiff, represented by non-attorney Dorita P. Watson, and Dr. Carey A. Washington, a Vocational Expert ("VE"). Id. After the hearing, the ALJ issued an unfavorable decision. R. 23.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 28, 2012, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, headaches, obesity, and borderline intellectual functioning (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967(b) except the claimant can occasionally crouch, kneel, stoop, balance, and climb ramps and stairs. She can never crawl or climb ladders, ropes, or scaffolds. The claimant must be allowed to alternate between sitting and standing positions for 30 minute intervals throughout the day without leaving the workstation. She must avoid concentrated exposure to heat; humidity; irritants; such as fumes, odors, dust, gases, and poorly ventilated areas; and hazardous machinery and unprotected heights. The claimant is further limited to low stress jobs, defined as having no fixed production quotas, no hazardous conditions, and only occasional decision making required and changes in the work setting. In addition, the claimant can have only occasional or superficial interaction with the public and coworkers.

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR § 416.969 and 416.969(a). The claimant has not been under a disability, as defined in the

2

> Social Security Act, since March 28, 2012, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 11-23.

On December 11, 2014, the Appeals Council denied Plaintiff's request for review, R. 1-3, and the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues the ALJ failed to properly discuss and evaluate the opinions of two treating medical professionals, Dr. Angela Wright and PA Johnson, failed to provide reasoning for assigning partial weight to consultative examiner Dr. Adrian Janit's opinion and finding of limitations, and failed to properly evaluate whether Plaintiff meets Listing 12.05C for intellectual disability.[1] (See doc. no. 16-1 ("Pl.'s Br.").) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 18 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding

---

[1]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

3

this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded to the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions is not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Weight of Opinion by Treating Physicians and Consulting Physicians.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford, 363 F.3d at 1159 (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (same).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding her daily activities). Furthermore, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 416.927(d).

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford, 363 F.3d at 1160-61. In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 416.927(c)(1)-(2), (5).

### B. The ALJ Properly Evaluated and Weighed the Medical Opinion Evidence.

#### 1) The ALJ Properly Assigned Little Weight to the Opinions of Treating Physician Dr. Angela Wright.

Dr. Angela Wright is a family practice physician who treated Plaintiff numerous times between 2006 and 2009 for migraines, back pain, allergic rhinitis, and anxiety. R. 331-346, 455. In 2007, Dr. Wright conducted an MRI of Plaintiff's lumbar spine and found degenerative disc disease with osteoarthritic changes. R. 330. On June 3, 2013, PA Johnson evaluated Plaintiff and completed a disability form diagnosing Plaintiff with back pain, sleep apnea, depression, and hypertension. PA Johnson found Plaintiff: (1) could stand and walk one to two hours in an eight hour workday; (2) would miss upwards of five days per month due to her medical conditions; (3) would be off task twenty percent of the day; (4) could frequently lift five pounds, and occasionally lift fifteen pounds; and (5) could never climb, kneel, or crawl. R. 670-672. Two months later, on August 14, 2013, Dr. Wright signed PA Johnson's disability form. R. 677. There is no explanation as to why Dr. Wright signed the form, aside from a cover letter to the

ALJ from Plaintiff's non-attorney representative Ms. Watson, explaining that "assignment of controlling weight is possible," in light of Dr. Wright's signature. R. 674.

Plaintiff argues the ALJ failed to consider Dr. Wright as a treating source and was required to give Dr. Wright's opinions controlling weight. Pl.'s Br. 16. The Commissioner argues the ALJ's determination Dr. Wright was not a treating source is supported by substantial evidence because Dr. Wright's treatment occurred years before Plaintiff's alleged onset date of January 13, 2012, and because Dr. Wright's treatment notes do not support the extent of Plaintiff's limitations. Comm'r's Br. 11-12.

At step four, the ALJ considered whether Dr. Wright was a treating physician entitled to substantial weight. R. 20. The ALJ noted Dr. Wright did not appear to have a significant ongoing treatment relationship with Plaintiff, as most of Plaintiff's medical examinations and treatment was provided by PA Johnson. Id. Indeed, the medical record demonstrates Plaintiff was primarily treated by PA Johnson who routinely saw Plaintiff for knee pain, arm pain, back pain, and medication refills. R. 638-669. The bulk of Plaintiff's treatment from Dr. Wright occurred between 2006 and 2009, well before Plaintiff's alleged onset disability date of January 13, 2012. R. 331-346, 455. In addition, the record does not reveal that Dr. Wright treated Plaintiff after the onset date. Accordingly, the ALJ demonstrated good cause in determining Dr. Wright's opinions were not entitled to controlling weight as the opinion of a treating physician. See Heppell-Libsansky v. Comm'r of Soc. Sec., 170 F. App'x 693, 698 (11th Cir. 2006) (determining physician who only saw patient twice after alleged onset date did not have longstanding relationship and ALJ did not err in refusing to assign controlling weight as treating physician).

7

Furthermore, although Dr. Wright signed PA Johnson's disability form, this does not require the opinion to be given great weight because Dr. Wright's involvement was limited to signing the form nearly two months after PA Johnson evaluated Plaintiff and completed the form. See Hatchel v. Astrue, No. 1:08CV168-MP/AK, 2010 WL 1030552, at *11 (N.D. Fla. Jan. 25, 2010), report and recommendation adopted, No. 1:08-CV-00168-MP-AK, 2010 WL 1029042 (N.D. Fla. Mar. 18, 2010) (finding medical opinion did not require assignment of great weight because doctor's role was limited to signing medical source statement). Because substantial evidence supports the ALJ's decision that Dr. Wright was not a treating physician entitled to substantial weight, the ALJ did not err in assigning Dr. Wright's opinions little weight.

**2)      The ALJ Properly Assigned Little Weight to PA Johnson's Opinion.**

Plaintiff argues the ALJ did not evaluate PA Johnson's June 3, 2013 opinion as an "other source" opinion under SSR 96-5p. Pl.'s Br. 14-15. The Commissioner maintains the ALJ properly considered PA Johnson's medical opinion, and substantial evidence supports the ALJ's determination that the opinion is entitled to little weight. Comm'r's Br. 9-11.

The only sources "who can provide evidence to establish an impairment" are licensed physicians (medical or osteopathic doctors), licensed or certified psychologist, licensed optometrists, licensed podiatrists, and qualified speech pathologists. 20 C.F.R. §§ 404.1513(a) & 416.913(a). The opinion of a Physician Assistant is not considered an "acceptable source" and therefore cannot establish the existence of an impairment. Crawford, 363 F.3d at 1160 (citing 20 C.F.R. §§ 404.1513(a) & 416.913(a)). Although the regulations state the ALJ "may" use evidence from sources other than an "acceptable medical source" to evaluate the severity of an impairment or a claimant's ability to work, an

ALJ is not required to give the opinion of a physician assistant substantial weight. 20 C.F.R. §§ 404.1513(d) & 416.913(d); Thompson v. Colvin, No. 2:14-CV-00140-MHH, 2014 WL 5502457, at *3 (N.D. Ala. Oct. 30, 2014) (citing Lawton v. Comm'r of Soc. Sec. Admin, 431 F. App'x 830, 833 (11th Cir. 2011)).

Here, the ALJ evaluated PA Johnson's June 3, 2013 opinion and determined it was entitled to little weight because it contained "insufficient cites to supporting medical evidence or analysis of specific functional limitations supporting overall conclusions on the form." R. 20. Indeed, PA Johnson's treatment notes do not support her generic conclusions of Plaintiff's limitations, and there are no objective medical findings or treatment plans consistent with her conclusions. See R. 670-672. In addition, PA Johnson's findings are routinely contradicted by her own treatment notes.

Although PA Johnson diagnosed Plaintiff with depression on June 3, 2013, she screened Plaintiff multiple times in 2013 and determined Plaintiff was not depressed. Plaintiff denied any symptoms of depression or sleep apnea during the June 3, 2013 evaluation that preceded PA Johnson's execution of the disability form on the same day. R. 639, 670-72. Treatment notes from an evaluation on February 12, 2013 also deny any symptoms of depression. R. 654. Most of PA Johnson's treatment notes indicate normal findings that do not suggest Plaintiff is severely limited. See generally R. 400-464, 502-06, 639-69. Moreover, her latest assessment on June 3, 2013, indicates Plaintiff's spine curvature was normal without ecchymosis or erythema, but did note vertebral spine tenderness with a limited range of motion. R. 639-640. Also, while PA Johnson diagnosed Plaintiff with hypertension, her treatment notes indicate Plaintiff's hypertension is benign. Id.

Significantly, PA Johnson's June 3, 2013 diagnoses and findings of Plaintiff's limitations are not supported by objective medical evidence or testing. See R. 670. For example, while PA Johnson found Plaintiff would be off task twenty percent of a working day, there is no evidence that PA Johnson ever evaluated Plaintiff's concentration deficits related to her conditions. See generally R. 639-69. The lack of objective medical evidence is a sufficient basis for the ALJ's decision to assign this conclusory check-the-box assessment little weight. See Hughes v. Comm'r of Soc. Sec. Admin., 486 F. App'x 11, 13-14 (11th Cir. 2012) (discounting opinion when unsupported by citation to specific objective medical evidence or test results); Brandon v. Astrue, No. 1:09-CV-1004-AJB, 2010 WL 3781981, at *10 (N.D. Ga. Sept. 22, 2010) (finding doctor did not support assessment with clinical findings).

Furthermore, as the Commissioner argues, although a physician's opinion about a claimant's restrictions or what a claimant can do is relevant, it is not determinative because the ALJ is responsible for assessing a claimant's RFC. See Beegle v. Comm'r. Soc. Sec. Admin., 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination . . . a physician's opinion . . . is not dispositive.") The ultimate disability determination always remains with the Commissioner. SSR 96-5; 20 C.F.R. § 404.1527(d).

In sum, substantial evidence supports the ALJ's decision to give PA Johnson's opinions little weight because they were contradicted by her own treatment notes and not supported by objective medical evidence.

### 3) The ALJ Properly Evaluated and Weighed Dr. Janit's Opinion.

Plaintiff argues the ALJ failed to properly evaluate consultative examiner Dr. Adrian Janit's opinion and failed to provide a rationale for assigning the opinion only partial weight.

Pl.'s Br. 19-20. Specifically, Plaintiff argues the ALJ did not consider or explain why he rejected Dr. Janit's finding that Plaintiff was moderate to markedly limited in her ability to withstand the stresses and pressures associated with most work settings. R. 500; Pl.'s Br. 19. The Commissioner argues the ALJ assigned proper weight to Dr. Janit's opinion because some findings were not supported by the treatment notes or other evidence. Comm'r's Br. 12-13.

Dr. Adrian Janit evaluated Plaintiff on May 17, 2012. R.493. Dr. Janit opined Plaintiff made appropriate eye contact, her expressive and receptive language abilities were within normal limits, her mood was moderately depressed, she appeared mildly anxious, and she demonstrated little range of emotion throughout the evaluation. R. 496. Dr. Janit evaluated Plaintiff's IQ and determined Plaintiff had a full scale IQ score of 64, placing her in the "extremely low" category. Dr. Janit diagnosed Plaintiff with major depressive disorder and borderline intellectual functioning. R. 497. However, Dr. Janit also opined Plaintiff had intact recent and remote memory, excellent short term memory, fair concentration, intact judgment, and abstract reasoning. R. 496.

As for Plaintiff's work-related mental abilities, Dr. Janit determined Plaintiff was: (1) not limited in her ability to understand and carry out instructions; (2) mildly limited in her ability to maintain attention and concentration; (3) mildly to moderately limited in her ability to respond appropriately to coworkers, supervisors, and the general public; (4) moderately limited in her ability to adhere to a work schedule and to complete tasks in a timely fashion; and (5) moderately to markedly limited in her ability to withstand the stresses and pressures associated with most work settings. R. 499-500.

The ALJ assigned Dr. Janit's opinion partial weight because Dr. Janit's treatment notes show Plaintiff was only moderately limited in her ability to carry out instructions and to maintain

11

concentration and attention, and aside from Dr. Janit's opinion, there was a paucity of records mentioning any mental health issues. R. 22. The ALJ specifically noted that the most recent medical records indicated Plaintiff denied any depression. R. 22, 639. In contrast to Plaintiff's assertions, the ALJ provided clearly articulated grounds for assigning Dr. Janit's opinion partial weight. Importantly, the ALJ was not bound by the findings of a one-time consultative examiner and Dr. Janit's opinion was not entitled to great weight. The ALJ properly assigned the opinion partial weight by citing other evidence in the record. See Evans v. Astrue, No. CV 309-101, 2011 WL 1636920, at *5 (S.D. Ga. Mar. 29, 2011), report and recommendation adopted, No. CV 309-101, 2011 WL 1637326 (S.D. Ga. Apr. 29, 2011).

Although Plaintiff argues the ALJ failed to explain his rationale for rejecting Dr. Janit's finding that Plaintiff was moderate to markedly limited in withstanding the stresses and pressures associated with most work settings, the ALJ did not reject this finding, and instead, incorporated it into the RFC analysis. Pl.'s Br. 19; R. 16. At step four, the ALJ explicitly limited Plaintiff to low stress jobs without fixed production quotas, hazardous conditions, and only occasional decision making. R. 16. The ALJ further limited Plaintiff's social interaction with the public and coworkers to only occasional or superficial levels. Id. Accordingly, the ALJ properly evaluated and weighed Dr. Janit's opinion, and substantial evidence supports the ALJ's decision to assign the opinion partial weight.

### C. The Requirements for Satisfying Listing 12.05(C) at Step Three of the Sequential Evaluation Process.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity.

Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). The regulations give several examples of adaptive activities, including: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and

hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C(1).

Listing 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. A claimant generally meets the Listing 12.05(C) criteria when she, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Thus, to meet Listing 12.05C, there must be a showing of (1) deficits in adaptive functioning; (2) a qualifying IQ score; (3) onset before age 22; and (4) the requisite deficits in work-related functioning. See Perkins., 553 F. App'x at 873 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05 and Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir.2001)).

### D. The ALJ's Finding that Plaintiff Did Not Meet Listing 12.05C is Supported by Substantial Evidence.

Plaintiff argues the ALJ did not properly evaluate whether she met Listing 12.05C for intellectual disability. Pl.'s Br. 20. The Commissioner argues the ALJ properly determined Plaintiff did not meet Listing 12.05C because Plaintiff was diagnosed with borderline intellectual functioning and does not demonstrate deficits in adaptive functioning. Comm'r's Br. 6-8.

Here, the ALJ's determination that Plaintiff did not meet Listing 12.05C is supported by substantial evidence. At step three, the ALJ evaluated whether Plaintiff met Listing 12.05, accepting Dr. Janit's finding that Plaintiff's full scale IQ was sixty-four. In

concluding that Plaintiff did not meet Listing 12.05C, the ALJ cited substantial evidence showing Plaintiff's lack of deficits in adaptive functioning. R. 14. The ALJ noted Plaintiff took care of her two-year-old grandson, was able to use public transportation, cook simple meals, attend church, watch television, read the newspaper every day, shop for groceries, complete crossword puzzles, and undertake all household tasks independently. R. 14, 17. At the hearing, Plaintiff testified she was a certified nursing assistant, takes care of her disabled adult child and two grandchildren, prepares meals such as spaghetti or fried chicken, can sweep and mop, handles laundry for her household, and takes her grandson to doctor's appointments by public transportation. R. 38-52.

In addition, while Dr. Janit evaluated Plaintiff's IQ and found it to be 64, Dr. Janit diagnosed Plaintiff with borderline intellectual functioning instead of intellectual disability. R. 499. A diagnosis of borderline intellectual functioning is mutually exclusive of intellectual disability. Jordan v. Comm'r of Soc. Sec., 470 F. App'x 766, 768-69 (11th Cir. 2012) (finding diagnosis of borderline intellectual disability was "mutually exclusive of [intellectual disability]").

The ALJ's finding that Plaintiff did not meet Listing 12.05C because she did not demonstrate deficits in adaptive functioning is consistent with Eleventh Circuit precedent and supported by substantial evidence of her activities and responsibilities as described in the preceding paragraph. See Perkins, 553 F. App'x at 873 (affirming ALJ's conclusion that plaintiff did not meet Listing 12.05C despite IQ in the required range due to work experience and daily living activities); Garrett v. Astrue, 244 F. App'x 937, 939 (11th Cir. 2007) (finding no deficits in adaptive functioning where claimant was "able to cook simple meals; perform chores such as dishwashing and yard work; and build model cars," had daily activities

15

that included "church attendance, television viewing, card playing, and walking in the mall," and testified that "with orientation and instruction, he believed he could return to [unskilled work].").

Plaintiff primarily takes issue with how the ALJ addressed the evidence of Plaintiff's adaptive functioning, arguing Plaintiff was unable to finish crossword puzzles, only cooked sandwiches and frozen dinners, and only took care of her grandson two or three times a week. Pl.'s Br. 24. Much of Plaintiff's argument goes to how the ALJ weighed the evidence, a task beyond this Court's purview. Cornelius, 936 F.2d at 1145. This Court's sole task is to determine whether substantial evidence supports the ALJ's conclusion that Plaintiff did not have the requisite deficits in adaptive functioning to meet Listing 12.05C. The evidence cited by the ALJ, considered as a whole, sufficiently supports the ALJ's determination that Plaintiff did not meet 12.05C.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 2nd day of August, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA